## Richmond.

## CLINCH RIVER MINERAL COMPANY v. HARRISON AND ANOTHER.

### FEBRUARY 14, 1895.

1. CONTINUANCE—*Discretion.*—A motion for continuance is always addressed to the sound discretion of the court, and the appellate court will presume that this discretion was properly exercised, unless the contrary is shown.

2. ATTACHMENT—*Affidavit.*—Affidavits as to the ground of attachment are always to be strictly construed, and any omission of the requirements of the statute is fatal to the attachment, but if the language of the affidavit necessarily implies the fact, it is sufficient. Hence, an affidavit "that the claim is just" and "that the defendant is converting," &c., is a sufficient compliance with a statute which requires an affidavit "that the claim is *believed to be* just," and "that *to the best of affiant's belief* defendant is converting," &c.

3. ATTACHMENT—*Temporary Removal of Goods out of State in Course of Trade.*—The shipment of products of an enterprise out of the State in due course of trade, where the removal is not permanent and the proceeds are brought back within the State, is not sufficient ground for an attachment. The statute does not mean to designate, as cause for attachment, every transitory or temporary removal. What is meant is a permanent removal. QUÆRE: Was it error to make the attachment returnable to rules. See section 2965 of the Code.*

4. ANSWER IN CHANCERY—*Admissions—Explanations.*—The whole of the answer, if used at all, in support of complainant's bill, or a particular allegation thereof, must be read and taken together. Explanations given must be read in connection with the admissions made.

5. ANSWER IN CHANCERY—*Allegations not Answered.*—Allegations of a bill, which are not responded to by the answer, are not to be taken as admitted, but must be proved by the complainant.

* This section has been so amended as to allow attachments issued in a pending suit to be made returnable either to a term of the court in which it is pending, *or to some rule day thereof.* Acts of Assembly, 1893-'94, ch. 436, page 495.

Appeal from a decree of the Circuit Court of Tazewell county, pronounced on the 14th day of March, 1894, in a suit in chancery wherein the appellees were the complainants and appellant was the defendant.

*Reversed.*

The bill did not waive an answer under oath. The defendant answered under its corporate seal, with the affidavit of its president attached. The other facts fully appear in the opinion of the court.

*Henry A. Routh*, and *Penn & Cocke*, for appellant.

*Chapman & Gillespie*, for appellees.

CARDWELL, J., delivered the opinion of the court.

The stockholders of the Clinch River Mineral Company, a corporation duly chartered under the laws of Virginia, engaged in the mining and manufacture of baryta and in other business connected therewith, desiring to sell their property and wind up their affairs, at a meeting held on the 7th day of March, 1893, passed a resolution appointing Joseph Harrison and N. J. Floyd a committee to sell the property of the corporation, and settle up its business, and particularly setting forth that the committee was to sell certain property to one D. I. Bachman and his associates at a stipulated price, which action of the stockholders was ratified and approved by the then board of directors of the company. Pursuant to this resolution, Harrison and Floyd, as a committee, did sell to Bachman and his associates certain property, consisting of the leaseholds owned by the corporation, together with baryta mills, bleaching and drying factory, &c., situated at or near Gardner, in the county of Russell, at the price of $18,000, one-third of

which ($6,000) to be paid in cash (which was paid), $5,000 to be paid in six months, $5,000 in twelve months, and the remainder, $2,000, in eighteen months, from the first day of April, 1893; it being further agreed that the property should be sold and bought by the transfer of the certificates of the stock of the company, and that the deferred payments should be secured by a deed of trust upon all the property acquired by the purchaser, except the manufactured baryta and the live stock. Accordingly all of the capital stock of the company was transferred and assigned to Bachman and his associates, and they accepted the same and proceeded to organize under the charter thus transferred, by the election of D. I. Bachman as president, and one M. Fackenthal as secretary, and other proper officers, and the Clinch River Mineral Company, thus reorganized, executed to Harrison and Floyd, committee as aforesaid, the three notes of the company for the deferred payments as above set forth, and, after being properly authorized by its board of directors, the company, on the 14th day of August, 1893, executed to A. P. Gillespie, trustee, a deed conveying certain leaseholds for the purpose of mining baryta on real estate situated in the county of Russell, Virginia, set out in the deed, to secure the payment of the three notes dated April 1, 1893. Harrison and Floyd, committee, also sold to the Clinch River Mineral Company, as reorganized, certain other property, including a lot of crude baryta, all of which was paid for except the crude baryta, and for this the company was to pay $1,298.52 on the 1st day of July, 1893, but defaulted in the payment; and when the first of the notes for $5,000, secured by the deed to Gillespie, trustee, dated April 1, 1893, fell due, on October 4, 1893, the company defaulted in its payment also, and the note was protested; whereupon Harrison and Floyd, committee, filed their bill of complaint, sworn to by Harrison, in the clerk's office of Russell Circuit Court against the Clinch River Mineral Company,

charging, among other things, that the "affairs of the company were being so managed as to involve the company in debt for the purpose of avoiding its liabilities;" that various liens by judgment and attachment had been acquired on the property of the company, rendering it improper for the trustee in the deed of trust securing complainants to sell the property before an account had been taken showing prioity of liens; that the company had on hand a considerable quantity of manufactured baryta, which complainants believed would be shipped out of the State and converted into money; that the company had on hand a considerable stock of general merchandise, which it was also converting into money, with intent to hinder, delay and defraud complainants and other creditors of the company; that complainants had sued out of the clerk's office of Russell Circuit Court an attachment which had been duly levied on the goods and other estate of the company for the amount already due to complainants; and the prayer of the bill was for an account of liens upon the property conveyed in the trust deed, the enforcement of the lien acquired by the attachment, for an injunction to restrain the company from collecting debts due to it, the appointment of a receiver, the execution of the trust deed under order of the court, and for general relief.

The affidavit of Joseph Harrison upon which the attachment issued, after setting out the aggregate debt due to complainants from the defendant company, says:

"That the claim asserted is just; that complainant ought to recover of defendant in the suit the sum claimed (at the least), with interest; that the defendant is removing and intends to remove its own estate, or the proceeds of the sale of its property, or a material part of such estate or proceeds out of the State, so that process of execution on a judgment when obtained in said suit will be unavailing, and that defendant is converting, or about to convert, and has converted its property

of whatever kind, or some part thereof, into money, securities or evidences of debt, with intent to hinder, delay and defraud its creditors.''

The order to the sheriff to attach the property of the defendant company was indorsed on the writ that issued on the bill and made returnable to rules to be held in the clerk's office on the last Monday in October, 1893.

An injunction was granted according to the prayer of the bill October 21, 1893, and, upon due notice being given to the defendant company, complainants moved the Circuit Court of Russell county in term, November 16, 1893, for the appointment of a receiver and for an order of sale upon the attachment issued in the cause; and thereupon the defendant company, by counsel, moved the court to dismiss the proceedings on the ground that no sufficient bonds had been executed as a condition for the issuing of the injunction and attachment, but the court overruled this motion, appointed a receiver and directed sale of the live stock, &c. On the 8th day of February, 1894, a motion was made by complainants before the judge of the Circuit Court of Russell county, in vacation, for an order of account, and the defendant company appeared by its counsel and agreed that the account might be ordered, which was done.

Later the defendant company, by petition filed in the cause, united in the prayer of a petition filed by the receiver for the enlargement of receiver's powers, but these petitions were not acted on until the hearing. The commissioner to whom the cause was referred for an account, filed his report and supplemental report, to which the defendant company excepted, because the commissioner recognized the debt of $1,298.52 as a lien on defendant company's property by reason of the attachment, and because certain other accounts are treated and reported as liens.

The defendant company did not, however, file its answer in the cause till the regular term of the court, March 14, 1894,

when the answer was filed and asked to be treated as a cross-bill, which was done.    Whereupon complainants filed their answer to the cross-bill, together with certain affidavits, and the Circuit Court overruled the motion of the defendant company for a continuance, and overruled its exception to the commissioner's report relating to the lien of the attachment, but sustained it so far as it related to .the other accounts reported as liens, and recognized these accounts as simple debts only. The report of the commissioner, in other respects being unexcepted to, was confirmed, and the decree of the court on the main question was as follows:

"The court is of opinion that the affidavit on which the attachment was issued is sufficient; and the court is further of opinion that the fact sufficiently appears from the defendant's answer that it was removing its property out of the State, so that any execution obtainable at law by the plaintiffs would not be available; and therefore it is adjudged, ordered and decreed that the motion to quash said attachment be overruled."

From this decree an appeal to this court was allowed and a supersedeas awarded.    These are the assignments of error made in the appellants' petition for the appeal:

First.  That the affidavit upon which the attachment issued is insufficient, because it does not state "that the claim is believed to be just," as the statute requires, and further that it does not state the existence, "to the best of affiant's belief, that the defendant is converting, or is about to convert," etc.

Second.  "That if it be granted that the affidavit is sufficient, then still it was incumbent upon the complainants to prove the truth of the allegations of said attachment; that is, first, that the defendant was moving its effects out of the Commonwealth, second, that it was converting or disposing of its effects with intent to defraud its creditors," and, as the allegations were not proven, the court should have quashed the attachment.

Third. "That the attachment should have been quashed for the reason that it was made returnable to Rule day," and not to the term.

And it is contended by the appellant in the petition and at bar that the Circuit Court erred in overruling its motion for a continuance and in hearing the cause at the March term, 1894.

A motion for a continuance is always addressed to the sound discretion of the court, and the appellate court will always presume that the court properly exercised that discretion, unless the contrary be shown. The facts disclosing any impropriety in the ruling of the court below on this motion are not in this record, and for us what does not so appear does not exist.

As to the first ground stated why the attachment should have been quashed, it will be noted that the affidavit states "that the claim is just," and "that the defendant is converting," &c., while the language of the statute in the one instance is, "that the claim is believed to be just," and in the other, "that to the best of affiant's belief, defendant is converting," &c.

It is true that the affidavit is always to be strictly construed, and any omission of the requirements of the law is fatal to the attachment, but if the language of the affidavit necessarily implies the fact, it is sufficient. Barton's Chancery Practice, Vol. I, p. 585. In this case the affidavit of Harrison leaves nothing to be implied, but states the facts. In the case of *Jones* v. *Leake*, 11 Smedes & Marshall, 591, where the statute of Mississippi required that the affidavit should show that the facts sworn to were within the personal knowledge of the affiant, or that he had been informed or believed them to be true, the affidavit sets out that defendant is indebted to affiant in a sum certain, and that he is about concealing his property so as to defeat the affiant's claim, and the High Court of Errors and Appeals of Mississippi held this to be sufficient. Mr. Justice

Thacker, in delivering the opinion of the court, said: "In these particulars there is the oath of the plaintiff plainly made to the facts.    They do not purport to have been sworn to upon the information of others, but carry clearly the presumption that they were within the personal knowledge of the affiant. As they are stated upon the oath of the plaintiff, it is but a fair construction that he believed them to be true.    Any other presumption in such case would be violent, illiberal, and unjust."

The language of Mr. Justice Thacker can be applied to the case here, and hence we see no error in the refusal of the Circuit Court of Russell county to quash the attachment on this ground.

The affidavit being sufficient, as we have seen, we come to consider the question raised by the second assignment of error, viz.: Whether the allegations of the affidavit were sufficiently proven to justify the court below in overruling the motion to quash on this ground.    The burden of proof was, as contended by the appellant, on the plaintiff in the court below to sustain the truth of the allegations, and this should have been required unless the facts alleged, necessary to sustain the attachment, were admitted by the defendant.    We are clearly of the opinion that the court erred in refusing to quash the attachment on the ground "that it sufficiently appears from the defendant's answer that it was removing portions of its property out of the State, so that any execution obtainable at law by the plaintiffs would not be available."    The fact is that this does not appear in the defendant's answer, except in the same connection with an explanation in the words "that such shipments were made in the due and regular course of business, and that the only market for baryta is outside of the State, and to no one is this fact better known than to the complainant."

Is too well settled for argument here that the whole of the

answer, if used at all, in support of the complainant's bill, or as to a particular allegation, must be read and taken together. Barton's Chancery Practice, Vol. I, 399 and 400, and cases there collated; and especially the case of *Morrison's ex'ors* v. *Grubbs*, 23 Gratt. 342. Following this established rule, the answer of the defendant company to the charge that it was removing portions of its property out of the State, &c., did not justify the Circuit Court in sustaining the attachment, in the absence of proof sustaining the allegation. This court cannot be too emphatic in the expression of its opinion, that the shipment of products of any enterprise out of the State in the due course of business or trade, where the removal is not permanent, and the proceeds are brought back within the State, is not sufficient ground for an attachment; and we think that this rule applies with all of its force to the case at bar. The complainants had been conducting this business of mining, manufacturing and selling baryta up to the time that the defendant company became the owner of the leaseholds and the entire equipment of the business, and it appears in the record that complainants were of necessity better informed than any one else that the only market for the baryta is outside the State. In fact, it is not denied by complainants that, upon making the sale to Bachman and his associates, complainants furnished a list of parties who would purchase the products of the enterprise, and that all of the parties on the list were outside the State. The statute does not mean to designate as cause for attachment every transitory or temporary removal. What is meant is permanent removal. Wade on Attachments, sec. 91; *Warden* v. *Thrilkeld*, 52 Iowa, 134; *Russell* v. *Wilson*, 18 Louisiana, 367. The defendant company could make no profitable use of the property bought of the complainants unless the products of the business could be marketed. Hence, so long as it was honestly shipping such products to market, though out of the State, an attachment was not authorized, it

appearing that the proceeds of the sales were being brought back into the State.

But on another ground appellees contend that the decree of the court below was justified, and that the attachment in this case should have been sustained, viz: The bill having charged that the defendant company had also on hand a considerable stock of general merchandise which it was converting into money, with intent to hinder, delay, and defraud complainants and other creditors, and the answer of the defendant company not denying this charge, or making reference to this stock of general merchandise, to this extent the bill stood as taken for confessed; or, in other words, this charge must be taken as admitted, and no proof of it was required by complainants. This is not what we understand to be the established rule.

In *Dangerfield & als.* v. *Claiborne & als.*, 2 H. & M., page 17, the learned Chanceller of the Superior Court of Chancery for the Richmond District, after stating the question to be, whether allegations in the bill, *not answered*, shall be considered as admitted, or must be proved by the plaintiffs, says: "The rule in future will be understood and settled, that where the answer is not responsive to a material allegation of the bill, the plaintiff may except to it as insufficient, or may move to have that part of the bill taken for confessed; but if he does neither, he shall not, on the trial, avail himself of any implied admission by the defendant; for, where the defendant does not answer at all, the plaintiff cannot take his bill for confessed, without an order of the court to that effect, and having it served upon the defendants; and this is the only evidence of his admission. Of course, if this mode of proceeding as to the confession of *the whole* bill be correct, it must be equally correct as to the confession of any part." This rule has been followed in all the cases reported in our State Reports where the question has arisen, and maintained by our learned commentators. *Argenbright* v. *Campbell and wife*, 3

H. & M. 165; *Coleman* v. *Lyne*, 4 Rand. 454; *Cropper* v. *Burtons*, 5 Leigh, 426, 432; *Miller* v. *Argyle's Ex'or et als.*, Ibid, 460; Robinson's Prac., Vol. 2, 313, and Barton's Chan. Prac., Vol. 1, 398 and 399.

Says Barton: "Those allegations of a bill which are not responded to by the answer, although an exception would properly lie on that account, are yet not to be taken as admitted, but must be proved by the plaintiff."

"In those cases where a different doctrine is held, the allegation was that some fact did *not* exist, or that something was *not* done."

In *Argenbright* v. *Campbell and wife, supra*, Judge Tucker, delivering the opinion of this court, says: "If the defendant does not answer the allegations of the plaintiff's bill, nor by his answer confess them, although there be *allegata* before the Chancellor there are no *probata;* and, it was the folly of the plaintiff not to except to the answer, if he relied upon a discovery of facts known to the defendant only; or, not to have proceeded to take depositions to prove the allegations of his bill, if he thought he could obtain such proof elsewhere."

Even if it were proper to read and consider the affidavits submitted by the plaintiffs at the hearing of this case below, they do not relieve the situation, as they afford no proof of this allegation; nor of any other upon which the attachment could rest; nor is there any force in the contention of appellees that the rule as to the weight of a commissioner's report laid down in *Bowers* v. *Bowers*, 29 Gratt. 697, and cases following it, has application to this case. The commissioner does not report the validity of the attachment, but leaves the question, as he should have done, to the determination of the court.

We are, therefore, further of the opinion that the decree of the court below sustaining the attachment was not justified on this ground, and the court, to the extent that it maintained the attachment in the case, must be reversed.

Having reached this conclusion, we deem it unnecessary to consider the third assignment of error, which is, as we have seen, that the attachment should have been quashed because it was made returnable to rules and not to the term of the court. Suffice it to say, that it sufficiently appears in the record that this irregularity was waived by the defendant company.

The cause is remanded to the Circuit Court of Russell county for such proceedings therein as may appear proper in accordance with the opinion of this court.

REVERSED.